United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Sanlu Zhang, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-20773-Civ-Scola |
| | ) **In Admiralty** |
| Royal Caribbean Cruises, Ltd. and others, Defendants. | ) ) |

### Omnibus Order Granting Motions to Dismiss

This maritime action arises from damages Plaintiff Sanlu Zhang sustained when he was seriously injured during a shore excursion in Cozumel, Mexico, while a passenger aboard a ship operated by Defendant Royal Caribbean Cruises, Ltd. (2nd Am. Compl. ("Compl." or "complaint"), ECF No. 11.) The Court struck Zhang's initial complaint because it was a shotgun pleading, impeding the Defendants' and the Court's abilities to assess Zhang's claims. Zhang submitted the instant version of his complaint on March 14, 2019, which fixed some of his earlier complaint's shortcomings. In his fifty-two-page complaint, Zhang seeks relief, in eleven counts, against both Royal Caribbean as well as the operators of the excursion, Defendants Renta Safari SA de CV ("Renta") and Operadora Aviomar SA de CV ("Operadora") (together the "Excursion Operators"). Four of the counts are lodged against all three entities together: misleading advertising (count one); "negligence . . . based on apparent agency or agency by estoppel" (count seven); "negligence . . . based on joint venture" (count eight); and "third-party beneficiary" (count nine). Five counts are brought solely against Royal Caribbean: negligent misrepresentation (count two); general negligence (count three); negligent failure to warn (count four); negligent selection and/or retention (count five); and breach of fiduciary duty (count ten). And two counts are brought against only the Excursion Operators: general negligence (count six); and negligence related to the assumed duty to provide prompt, proper, and adequate medical care and transportation in Miami (count eleven). In response, Royal Caribbean, as well as, jointly, the Excursion Operators, have filed motions to dismiss. (ECF Nos. 14, 26.) Royal Caribbean submits that Zhang's claims against it should be dismissed because he has failed to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). The Excursion Operators additionally argue that Zhang's complaint against them should be dismissed for a lack of personal jurisdiction under Rule 12(b)(2). Zhang has responded to both motions (Pl.'s Resp., ECF Nos. 18, 30) and the Defendants have replied (Royal Caribbean's Reply, ECF No. 19; Exc. Ops.' Reply, ECF No. 31). After careful consideration, the Court agrees with the Defendants

and **grants** both Royal Caribbean's motion (**ECF No. 14**) as well as the Excursion Operators' motion (**ECF No. 26**).

### 1. Background.[1]

Zhang, a first-time cruise passenger and Chinese national, embarked on Royal Caribbean's *Oasis of the Seas*, in March 2018, for a seven-night Western Caribbean cruise. During the cruise, Royal Caribbean advertised a shore excursion in Cozumel, Mexico: the "Mayan Ruins, Island Tour and Beach." (Compl. at ¶¶ 22, 111.) Prior to Zang's deciding to join the tour, Royal Caribbean provided a wealth of general information about its land-based tours to Zhang in its *Shore Excursion Guide*. According to the guide, Royal Caribbean's tours are "exciting, appealing, and enriching" and Royal Caribbean encourages its passengers to "let [Royal Caribbean's] destination experts plan your time ashore." (*Id.* at ¶ 31.a.) Through the guide, Royal Caribbean claims its excursion are the "best all-around value" and "local tours," boasting that Royal Caribbean "team[s] up with the top tour operators in each port to deliver the highest-quality, handpicked tours." (*Id.* at ¶ 31.b.) Royal Caribbean further urges its passengers, through the guide, to "[e]njoy peace of mind with guaranteed return to the ship." (*Id.*) With respect to the specific tour Zhang embarked on, Royal Caribbean represented that guests will "[e]njoy a scenic motor coach ride, admiring the spectacular crystal-clear Caribbean oceanfront vistas on [the] drive." (*Id.* at ¶ 32.) Further, on its website, Royal Caribbean represented that it "works with reputable and insured tour operators." (*Id.* at ¶ 33.)

In marketing and arranging Zhang's shore excursion, Royal Caribbean did not disclose to Zhang that the tour was owned and being run by the Excursion Operators. (*Id.* at ¶¶ 36.a.–c.) The Excursion Operators were not involved in the advertising or promoting of the excursion. (*Id.* at ¶¶ 36.c.–f.) In fact, Zhang says that until he actually participated in the excursion, he dealt exclusively with Royal Caribbean. (*Id.* at ¶ 36.e.) Neither Renta nor Operadora was involved in any way with Zhang's purchase of the excursion. (*Id.* at ¶¶ 36.g.–h.) Royal Caribbean and the Excursion Operators, however, shared the profits and losses incurred as a result of Royal Caribbean's offering the excursions to its passengers. (*Id.* at ¶¶ 40.g.–h.) Indeed, unbeknownst to Zhang at the time, Royal Caribbean and the Excursion Operators contracted with each other in order to provide the excursion to Royal Caribbean's passengers. (*Id.* at ¶ 105.) Within that contract is a provision wherein the Excursion Operators agree to meet the

---

[1] The Court accepts Zhang's factual allegations as true for the purposes of evaluating Norwegian's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

highest safety standards in the industry and to afford Royal Caribbean preferred status with respect to the quality of its tour guides. (*Id.* at ¶ 108.)

Ultimately, Zhang bought tickets for the excursion, which included bus transportation to and from the tour destinations. While on the way to the Mayan ruins portion of the excursion, the bus hit a pothole which flung Zhang, sitting at the back of the bus, into the air. (*Id.* at ¶ 25.) Zhang was tossed to the ceiling of the bus and then thrown back down where his back hit the edge of his seat. (*Id.*) The force of the impact resulted in an "L1 burst fracture" of Zhang's spine. (*Id.*) Because of the accident, Zhang is now paralyzed from the waist down and suffers other continuing severe and permanent injuries. (*Id.*)

After the accident, Zhang was taken by ambulance to a medical center in Cozumel. The following day, on March 10, the Excursion Operators made arrangements for him to be transferred via air ambulance to Jackson Memorial Hospital in Miami, Florida. (*Id.* at ¶ 117.) The Excursion Operators also made arrangements for Zhang to undergo surgery the following day, in Miami, to have hardware implanted. (*Id.* at ¶ 118.) A month and a half later, on April 28, the Excursion Operators arranged for Zhang to be transferred to full-time hospital care in China, where he has remained ever since. (*Id.* at ¶ 119.) Although medical professionals recommended that Zhang be transported to China via a private, specialized air ambulance, the Excursion Operators instead sent Zhang on a commercial flight. (*Id.* at ¶¶ 120–21.)

In the course of transferring Zhang to Miami, the Excursion Operators provided a guarantee to the United States Customs and Border Protection, Department of Homeland Security, in Miami, that they would pay for all of Zhang's medical care in Miami. (*Id.* at ¶ 124.) Ultimately, however, the Excursion Operators did not pay all of Zhang's medical bills. (*Id.* at ¶ 125.) As a result, Zhang was left to incur medical expenses and hospital write-offs which Zhang characterizes as causing public funds to be used to cover Zhang's medical care. (*Id.*)

## 2. Legal Standard
### A. Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading

standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### B. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011). To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 Fed.Appx. 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of its own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The plaintiff must do more than "merely reiterate the factual allegations in the complaint." *Id.* (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583

(M.D. Fla. 1991)). Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." *Id.*

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

### 3. Analysis
#### A. Zhang fails to allege enough facts to plausibly support any of his negligence claims directly against Royal Caribbean.

"To prevail on a negligence claim, a plaintiff must show that (1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quotations omitted). "With respect to the duty element in a maritime context, a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel." *Id.* (quotations omitted). To prevail on a negligence or failure-to-warn claim with respect to a dangerous condition, a plaintiff must show that the defendant "had actual or constructive notice of a risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.* (quotations and alterations omitted); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (requiring notice with respect to a duty-to-warn claim); *Horne v. Carnival Corp.*, 741 Fed. App'x 607, 609 (11th Cir. 2018) (requiring notice with respect to a failure-to-maintain claim). As Zhang acknowledges, Royal Caribbean's liability for Zhang's negligence claims, under whatever theory alleged, then "hinges on whether it

knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720 (quotations omitted).

In the face of Royal Caribbean's motion to dismiss, Zhang insists he has "unquestionably supported" his claims with sufficient facts. (Pl.'s Resp. to Royal Caribbean's Mot. at 7.) In furtherance of his argument, he points to (1) a list of ten bus accidents that have occurred during Royal Caribbean excursions over the last ten years; (2) Royal Caribbean's initial approval and yearly inspections of the Excursion Operators; and (3) Zhang's allegation that the excursion was "unreasonably dangerous" based on the "dangerous operation of the bus at high speeds in light of the road conditions," "the inadequate supervision of the bus operations," and Royal Caribbean's lack of knowledge regarding the identity and qualifications of the operator of the bus. (*Id.* at 7–8 (quoting Compl. at ¶¶ 29–30, 59, 66–67).) None of these allegations, however, either separately or together, amount to actual facts that would plausibly show that Royal Caribbean knew or had reason to know that the bus Zhang rode in would be driven over a pothole in such a way that would result in injury.

To begin with, the ten accidents Zhang lists have no apparent connection to the incident that resulted in Zhang's injuries. In identifying these other bus accidents, Zhang indicates, for each incident, only the date it occurred, which Royal Caribbean ship the excursion is associated with, and the location of the accidents. (Compl. at ¶ 29.) None of the incidents is described except that Zhang notes only, in each case, the passengers "were injured," without further elaboration. (*Id.* at ¶ 29.a.–j.) Notably, "there is no explanation as to *how* these incidents put Carnival on notice." *Serra-Cruz v. Carnival Corp.*, No. 1:18-cv-23033-UU, 2019 U.S. Dist. LEXIS 23591, at *23-24 (S.D. Fla. Feb. 11, 2019) (Ungaro, J.). For example, were potholes involved in any of the other accidents? Who operated the tour companies involved? Who were the drivers of the other buses? How did Royal Caribbean become aware of the other accidents? How fast were the buses going? What were the conditions? Zhang's complaint answers none of these questions. As such, this list of other accidents does not support Zhang's claim that Royal Caribbean knew or should have known about the alleged dangerousness associated with the tour.

Additionally, Zhang does not explain how any of Royal Caribbean's alleged inspections of the Excursion Operators could have possibly alerted it to the dangerous condition that ultimately resulted in Zhang's injuries. What was it about these inspections that should have put Royal Caribbean on notice? Zhang's allegations that the excursion was "unreasonably dangerous," with the bus being operated at too high a speed "in light of the road conditions" are mere legal conclusions, devoid of supporting facts. How fast was the bus traveling? What about this speed makes it *too* fast? What were the road conditions? The

complaint points to one pothole—was it visible? How long had it been there? Should the driver have been aware of it? Was it marked? Was it possible for drivers to avoid the pothole if they were traveling the speed limit? Despite his arguments to the contrary, Zhang's allegations that the "bus operations" were "inadequate[ly] supervis[ed]" and that Royal Caribbean was ignorant of the identity and qualifications of the bus operator do not bridge these gaps. The Court agrees with Royal Caribbean that, ultimately, Zhang's allegations are wholly conclusory, resting on purely "'naked assertions devoid of further factual enhancement." *Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1340 (S.D. Fla. 2016) (Moore, C.J.) (quoting *Iqbal*, 556 U.S. at 678) (alterations omitted). In the end, Zhang's negligence claims set forth in counts three and four cannot escape dismissal because they are "bereft of supporting facts and resemble[] the sort of 'unadorned, the-defendant-unlawfully-harmed-me accusations' that Rule 8 seeks to prevent." *Thompson*, 174 F. Supp. 3d at 1341 (quoting *Iqbal*, 556 U.S. at 678). Lastly, because Zhang's negligent selection and retention claim also requires a showing that Royal Caribbean knew or should have know about the Excursion Operators or bus driver's incompetence or unfitness, count five is also dismissed.

### B. Zhang's claims of Royal Caribbean's negligence based on apparent agency or agency by estoppel as well as joint venture also fail.

In counts seven and eight, Zhang seeks to hold Royal Caribbean vicariously liable for the Excursion Operators' negligence under theories of agency and joint venture. In order to succeed on these claims, however, Zhang must state a claim for negligence against the Excursion Operators. Once again, however, Zhang's allegations fall short. For many of the same reasons the Court finds the notice allegations with respect to Zhang's negligence claims against Royal Caribbean lacking, the Court also finds the allegations against the Excursion Operators deficient. Zhang fails to set forth any actual facts from which the Court could infer that Royal Caribbean knew or should have known that the bus driver would hit a pothole, resulting in Zhang's injuries. Instead Zhang merely recites a series of conclusions and allegations devoid of any connection to the incident Zhang described: the Excursion Operators knew, or should have known, about the excursion dangers from "ongoing operations," "taking the excursion," "conducting inspections," "reviewing or enacting . . . policies and procedures," "reviewing the qualifications and reputations of the bus operator," and "supervising the operations of the bus." (Compl. at ¶ 81.a.) These are not *facts* which would indicate notice of a dangerous condition. Not only do Zhang's allegations suffer from a lack of factual support, some are nonsensical. For example, Zhang maintains that the Excursion Operators had notice of the

alleged dangerous condition based on their "actual knowledge that they did not review the identity, qualifications, and reputations of the provider of the bus transportation." (*Id.* at ¶ 81.c.)

Moreover, Zhang again relies on the ten accidents set forth regarding his direct negligence claim against Royal Caribbean. For the same reasons that those incidents failed to show that Royal Caribbean had notice, they also fail to establish the Excursion Operators' notice. Zhang's insistence that the Excursion Operators should have known about the bus operator's incompetence and unfitness from "[t]horoughly inquiring into the bus operator's certification(s), license(s), reputation, reviews, prior incidents, years in operation, and/or history" (*Id.* at ¶ 81.e.–f.) also misses the mark. How could such inquiries have revealed the driver's alleged incompetence and unfitness? Furthermore, and more fundamentally, Zhang's complaint does not set forth any facts showing that the driver was actually incompetent or unfit, to begin with.  In sum, Zhang's complaint falls short of stating a claim for negligence against the Excursion Operators and therefore his claims against Royal Caribbean for vicariously liability also fail.

### C. Zhang fails to state a claim for misleading advertising or negligent misrepresentation.

The Court will address these two counts together as they are nearly identically pleaded and, as Zhang agrees, are governed by the same legal principles. To establish his claims for negligent misrepresentation under both Florida common law and Fla. Stat. § 817.41, Zhang must set forth facts showing:

> (1) misrepresentation of a material fact; (2) that the representor made the misrepresentation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that injury resulted to the party acting in justifiable reliance on the misrepresentation.

*Serra-Cruz*, 2019 U.S. Dist. LEXIS 23591, at *14. Zhang maintains he has sufficiently pleaded the elements of these claims by (1) setting forth "a detailed description of such misrepresentations" in paragraphs 31–35, 45, and 52 of his complaint; (2) alleging that Royal Caribbean knew or should have known of the falsity of its statements based on its "(a) initial approval process; (b) yearly inspections; and/or (c) prior incidents"; (3) alleging that Royal Caribbean "made or disseminated the statements with the intent or purpose of inducing Plaintiff to rely on the statements"; and (4) alleging that Zhang was justified in his reliance

because Royal Caribbean was in a better position to identify dangers and advise Zhang about his excursion and that this reliance resulted in his injuries. (Pl.'s Resp. to Royal Caribbean's Mot. at 4.) The Court agrees with Royal Caribbean that Zhang's pleading does not get him past even the first element of his claim.

Notably, in many of Zhang's allegations, he fails to supply facts showing that a particular statement was false. For example, Zhang complains that Royal Caribbean's statement that he would "[e]njoy a scenic motor coach ride, admiring spectacular crystal-clear Caribbean oceanfront vistas on [the] ride" was false because "the bus was operated dangerously at a high rate of speed especially in light of the road conditions." (Compl. at ¶¶ 45.a., 52.a.) To begin with, Zhang's allegation that the "bus was operated dangerously" is not a fact but is, instead, a legal conclusion. As is his allegation that the bus was operated "at a high rate of speed especially in light of the road conditions." More importantly, Zhang does not offer any support showing that Royal Caribbean's statement—that the bus ride would be scenic and offer spectacular views—is actually false. His other allegations suffer from similar defects. Zhang points to all of the following statements in Royal Caribbean's excursion brochure as being misrepresentations of material facts: "the bus operator was from one of the 'top tour operators' in Cozumel"; "[Royal Caribbean] participated in the bus operation by 'teaming up with the top tour operators'"; "'[Royal Caribbean] 'handpicked' the bus operator"; "the Plaintiff would 'Enjoy peace of mind with guaranteed return to the ship'"; "[Royal Caribbean] 'arranged for the shuttle bus'"; "the excursion providers are safe, reliable and reputable"; and "shore excursion providers are insured." Zhang has not set forth any facts showing that any of these statements are actually false.

Further, Zhang's complaint that Royal Caribbean misrepresented that the Excursion Operators would be subject to jurisdiction in the United States fails for the additional reason that Zhang does not specify, as required by Federal Rule of Civil Procedure 9(b), exactly what Royal Caribbean's statement was in this regard or when and where the statement was communicated to him. This allegation also suffers from being untethered to his injury: in what way did Zhang's reliance on this alleged misrepresentation result in his injuries on the bus?

Lastly, many of the misrepresentations that Zhang points to are not actionable. That is, "the general promise of a 'safe, reliable, licensed, excursion' is not actionable." *Gibson v. NCL (Bahamas) Ltd.*, 11-24343-CIV, 2012 WL 1952667, at *6 (S.D. Fla. May 30, 2012) (Seitz, J.); *see also Hoard v. Carnival Corp.*, 14-23660-CIV, 2015 WL 1954055, at *3 (S.D. Fla. Apr. 17, 2015) (King, J.) (holding the same with respect to statements that an operator was "handpicked," "insured, reliable, and reputable"). Ultimately, a "general promise

that the trip will be 'safe and reliable' does not constitute a guarantee that no harm will befall plaintiff." *Young v. Carnival Corp.*, 09-21949-CIV, 2011 WL 465366, at *3 (S.D. Fla. Feb. 4, 2011) (King, J.) (quoting *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 391 (7th Cir.1989)). Instead, such language is considered mere puffery and cannot, therefore, support a claim for misrepresentation. *See Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1211 (M.D. Fla. 2014) (describing puffery as "generalized, non-verifiable, vaguely optimistic statements" that "are immaterial as a matter of law and therefore inactionable").

For the foregoing reasons, the Court agrees with Royal Caribbean that Zhang's claims under counts one and two, for misleading advertising and negligent misrepresentation, should be dismissed.

**D. Zhang fails to state a claim for breach of contract as a third-party beneficiary to the contract between Royal Caribbean and the Excursion Operators.**

In count nine, Zhang claims he is a third-party beneficiary of the contract entered into between Royal Caribbean and the Excursion Operators and that Royal Caribbean breached the contract by failing to provide a reasonably safe excursion to him. To plead the breach of a third-party beneficiary contract, a plaintiff must allege: "(1) the existence of a contract in which plaintiff is not a party, (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff, (3) breach of that contract by one of the parties and (4) damages to plaintiff resulting from the breach." *Lapidus v. NCL Am. LLC*, 12-21183-CIV, 2012 WL 2193055, at *6 (S.D. Fla. June 14, 2012) (Seitz, J.) (citations and quotations omitted). "For a contract to intend to benefit a third party, such intent must be specific and must be clearly expressed in the contract." *Steffan v. Carnival Corp.*, 16-25295-CIV, 2017 WL 7796726, at *6 (S.D. Fla. May 22, 2017) (Altonaga, J.) (quotations and citations omitted). An "incidental or consequential benefit" is insufficient. *Id.*

Here, the contract described by Zhang defines the relationship between Royal Caribbean and the Excursion Operators. As Zhang describes it, the contract states that its purpose is to set forth the parameters under which the Excursion Operators will provide tours to Royal Caribbean's passengers; that the Excursion Operators will satisfy the highest standards in the industry; that Royal Caribbean will receive preferential treatment from the Excursion Operators; that the Excursion Operators will not allocate their best tour guides and buses to other cruise lines; that Royal Caribbean has the sole discretion to set the prices it charges its passengers for the excursions; and that Royal Caribbean has the sole discretion to provide full or partial refunds. (Compl. at ¶ 108.) None of these purported provisions, however, supports a plausible

inference that the contract is intended to primarily and directly benefit Royal Caribbean's passengers generally, never mind Zhang himself specifically. At most, any benefit conferred on Zhang is merely incidental.

Further, to the extent Zhang alleges that Royal Caribbean and the Excursion Entities contracted to ensure the safety of Royal Caribbean's passengers, "this is far too generalized to support a third-party beneficiary claim." *Serra-Cruz*, 2019 U.S. Dist. LEXIS 23591, at *32-34 (collecting cases). Indeed, allegations that a contract requires excursion operators to maintain insurance and exercise reasonable care, "fail to satisfy the pleading requirements because they do not clearly and specifically express a [d]efendant[']s] intent to primarily and directly benefit a [p]laintiff[]." *Finkelstein v. Carnival Corp.*, 1:14-CV-24005-UU, 2015 WL 12765434, at *4 (S.D. Fla. Jan. 20, 2015) (Ungaro, J.) (quotations and citations omitted); *see also Gayou v. Celebrity Cruises, Inc.*, 11-23359-CIV, 2012 WL 2049431, at *11 (S.D. Fla. June 5, 2012) (Scola, J.) (finding that a contract provision requiring an excursion operator to "satisfy the highest standards in the industry" is far too general to support a finding that a plaintiff is a third-party beneficiary to a contract).

In sum, because Zhang has not set forth any facts showing that the contract between Royal Caribbean and the Excursion Operators was specifically and clearly intended to primarily and directly benefit him, the Court agrees with Royal Caribbean that count nine should be dismissed.

### E. Zhang fails to state a claim for breach of fiduciary duty.

In count ten, Zhang seeks to hold Royal Caribbean liable for breaching its fiduciary duty to him. The Court agrees with Royal Caribbean that there is no legal support for such a claim under maritime law. Instead, "ship-owners owe a duty of 'reasonable care under the circumstances,'" and "are neither insurers nor fiduciaries of passengers." *Serra-Cruz*, 2019 U.S. Dist. LEXIS 23591, at *34-35 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1334 (11th Cir. 1984)). The Court thus agrees with Royal Caribbean that, absent any legal support for such a claim, count ten should also be dismissed.

### F. The Court does not have specific jurisdiction over the Excursion Operators.

Florida's long-arm statute provides two bases for the exercise of personal jurisdiction over a non-resident defendant. "General jurisdiction refers to the power of the forum state to exercise jurisdiction in any cause of action involving a particular defendant, regardless of where the cause of action arose." *PVC Windoors*, 598 F.3d at 808. In contrast, "[s]pecific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions

within the forum." *Id.* (quotations omitted). Here, in response to the motion to dismiss, Zhang contends the Excursion Operators are subject to specific jurisdiction in Florida on two bases: (1) they committed a tortious act within Florida; and (2) they entered into a contract that complies with Florida Statute section 685.102.

**(1) Zhang fails to establish that the Court can exercise jurisdiction over the Excursion Operators through the application of Florida Statutes section 48.193(1)(a)2.**

Florida Statute section 48.193(1)(a)2. provides for specific jurisdiction over foreign defendants who "[c]ommit[] a tortious act within this state." "In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors*, 598 F.3d at 808 (quotations omitted). To support his claim that the Excursion Operators committed a tortious act within Florida, Zhang does not focus on the accident on the bus in Mexico. Instead, he points to the following allegations from his complaint:

> [T]he Excursion Entities activities in Miami, Florida subject the Excursion Entities to specific jurisdiction by the Excursion Entities undertaking a duty to provide adequate medical care in Miami, Florida and providing a guarantee to the United States Customs and Border Protection, Department of Homeland Security, in Miami Florida, that no public funds would be used for the Plaintiff's medical treatment; and undertaking a duty to provide adequate medical transport from Miami, Florida to China to the Plaintiff; and then breaching those duties as described more fully in Count XI.

(Compl. at ¶ 16.) In count eleven, Zhang expands on these claims, alleging "medical professionals" told the Excursion Operators they recommended Zhang be transported to China from Miami via "a private, properly equipped, specialized air ambulance." (*Id.* at ¶ 120.) Despite this recommendation, however, the Excursion Operators instead had Zhang travel to China by way of a "non-private commercial flight." (*Id.* at ¶ 121.) Further, notwithstanding their "guarantee to the United States Customs and Border Protection, Department of Homeland Security, in Miami, Florida" that they would pay for all of Zhang's medical treatment, the Excursion Operators failed to do so. (*Id.* at ¶¶ 124–25.)

According to Zhang, the Excursion Operators were negligent in arranging and providing "prompt, proper, and adequate medical care and transportation in Miami, Florida" after assuming the duty to do so and therefore have committed a tort in Florida. (Pl.'s Resp. to Exc. Ops. Mot. at 4.) Fatal to Zhang's argument,

however, is his failure to allege facts supporting his claim that the Excursion Operators breached their duty. That is, even if the Excursion Operators assumed the duty to arrange reasonable transport, the facts set forth do not permit the inference that they breached this duty. Once again, Zhang points to legal conclusions to support his argument that he has stated a claim for relief. For example, his allegation that the commercial flight the Excursion Operators arranged for "caused the Plaintiff medical complications, exacerbation of his medical conditions, physical pain, physical suffering, emotional pain, and suffering and indignity" is unsupported by any facts: How did the commercial flight do this? How would a private flight have prevented the generalized pain, suffering, and indignity that Zhang describes? Why was the commercial flight an unreasonable choice? Zhang's other unsupported allegations—that the Excursion Operators breached their duty by "[d]elaying medical care and transportation from Miami . . . to China"; "[f]ailing to provide adequate and appropriately equipped medical transport from Miami . . China"; and "[f[ailing to provide adequate medical assistance during transport"—fare no better. Missing are concrete facts that would allow the Court to infer that something the Excursion Operators did in Florida actually resulted in injury, or further injury, to Zhang. Without these facts, Zhang is simply left with vague allegations that the Excursion Operators possibly acted unlawfully.

Moreover, Zhang's claims regarding the Excursion Operators' payment guarantee to Customs in Miami also miss the mark. Zhang provides no support, and the Court is not aware of any, that these allegations amount to negligence. And certainly Zhang has provided no facts to sustain his claim that the Excursion Operators' failure to follow through on a guarantee to U.S. Customs resulted in injury to him. In sum, the Court agrees with the Excursion Operators that Zhang fails to state a claim for relief with respect to a tort committed in Florida and therefore fails to establish the Court's specific jurisdiction over the Excursion Operators on this basis.

**(2) Zhang fails to establish that the Court can exercise jurisdiction over the Excursion Operators through the application of Florida Statutes section 48.193(1)(a)9.**

Florida Statute section 48.193(1)(a)9. provides for specific jurisdiction over foreign defendants who have "enter[ed] into a contract that complies with s. 685.102." Zhang maintains that the contract between Royal Caribbean and the Excursion Entities satisfies the requirements of this provision. However, in order for (1)(a)9. to apply here, Zhang must first show that he is a third-party beneficiary of this contract. *See Wolf v. Celebrity Cruises, Inc.*, 683 Fed. App'x 786, 793 (11th Cir. 2017) (determining that a plaintiff could not establish specific

jurisdiction by resorting to language in a tour-operator agreement because he was not a third-party beneficiary of the contract).

To begin with, as Zhang himself acknowledges, a clause in the tour operator agreement affirmatively disclaims any benefit to third parties: "this Agreement shall not be deemed to provide third parties with any remedy, claim, right or action or other right." (Agmt. ¶ 12.10, ECF No. 26-2, 4.) Not to be deterred however, Zhang maintains this is not enough to undercut his argument that he is a third-party beneficiary of the contract. Instead, he says, the Court must analyze the contract "*as a whole*," with consideration to the "circumstances" and "apparent purpose" of the goal of the agreement. (Pl.'s Resp. to Exc. Ops.' Mot. at 9 (emphasis in original).) But as the Court has already concluded, above in section 3.D., the objective of the tour operator agreement was to define the relationship between Royal Caribbean and Excursion Operators. Zhang has not pointed to any provision in the agreement that clearly and specifically expresses an intent to primarily and directly benefit Zhang. Accordingly, Zhang cannot establish that the Court has personal jurisdiction over the Excursion Operators on this basis.

### G. The Court does not have general jurisdiction over the Excursion Operators.

In his complaint, Zhang also maintains that the Excursion Operators are subject to general jurisdiction as well. (Compl. at ¶ 12–14.)  In support, he maintains that the Excursion Operators "have engaged in substantial and not isolated activity within [Florida]." (*Id.* at ¶ 12.) There is no dispute that the Excursion Operators have both continually maintained their principal places of business and places of incorporation in Mexico. Further, Zhang's allegations do not come anywhere close to being the type of "exceptional case" where a foreign corporation would be deemed to have met the stringent "at home" test for personal jurisdiction. *See Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015) ("A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business.") Indeed, Zhang did not even oppose the Excursion Operators' motion to dismiss on this ground. (Pl.'s Resp. to Exc. Ops.' Mot. at 3 (maintaining only that the Excursion Operators are properly before the Court on the basis of specific jurisdiction only).) Accordingly, the Court finds Zhang has waived any argument regarding general jurisdiction.

Alternatively, Zhang requests (1) jurisdictional discovery and (2) leave to amend in order to state a Rule B claim. The Court denies both requests. First, Zhang has not set forth specific information that will establish the Court's

general jurisdiction over the Excursion Operators. Instead, he simply maintains that, generally, "jurisdictional discovery will allow Plaintiff to obtain information and documents concerning the Excursion Entities contacts in Florida and the United States." (Pl.'s Resp. to Exc. Ops.' Mot. at 14.) This is not enough to entitle Zhang to jurisdictional discovery. *See Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1346 (S.D. Fla. 2016) (Ungaro, J.) ("Plaintiff is precluded from pursuing jurisdictional discovery in an attempt to marshal facts that she should have had—but did not—before coming through the courthouse doors.") (internal quotations omitted). Secondly, Zhang's request for leave to amend is improperly presented as an afterthought in response to a motion to dismiss and will not, therefore, be considered.

### 4. Conclusion

For the reasons set forth above, the Court **grants** Royal Caribbean's motion to dismiss for failure to state a claim (**ECF No. 14**) and the Excursion Operators' motion to dismiss for lack of personal jurisdiction (**ECF No. 26**). The Court dismisses Zhang's claims against the Defendants **without prejudice**. In addition to seeking to amend to plead a Rule B claim, Zhang also, "requests leave to amend" in the event either motion to dismiss is granted. (Pl.'s Resp. to Royal Caribbean's Mot. at 21; Pl.'s Resp. to Exc. Ops.' Mot. at 20.) These requests are improper and are therefore denied. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.,* 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (quotations omitted). The Court thus dismisses this action **without leave to amend** to the complaint.

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered**, in Miami, Florida on November 14, 2019.

Robert N. Scola, Jr.
United States District Judge